## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

RAMDAS BHANDARI, M.D.,

       Plaintiff/Counter-defendant,

vs.                                                     No. CIV 09-0932 JB/GBW

VHA SOUTHWEST COMMUNITY
HEALTH CORPORATION d/b/a
COMMUNITY HOSPITAL CORPORATION
and ARTESIA GENERAL HOSPITAL,

       Defendants/Counter-claimants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendants' Motions in Limine, filed July 3, 2011 (Doc. 111). The Court held a hearing on March 30, 2011. The primary issue is whether the Court should exclude certain evidence at trial. The Court will grant in part and deny in part the Defendants' motion. The Court will exclude some, but not all, of the evidence that the Defendants request it exclude at trial.

## <u>PROCEDURAL BACKGROUND</u>

On July 12, 2010, R. Bhandari filed his Second Amended Complaint for Fraudulent and/or Negligent Misrepresentation; Constructive Fraud; Breach of Contract; Breach of the Implied Covenant of Good Faith and Fair Dealing; Wrongful Discharge in Violation of Public Policy; Outrageous Conduct; Defamation; False Light Invasion of Privacy; and Intentional Infliction of Emotional Distress. <u>See</u> Doc. 35 ("SAC"). On July 27, 2010, the Defendants filed their First Amended Answer and Counterclaim, alleging causes of action for breach of contract, conversion/theft, defamation, and fraud. <u>See</u> Doc. 44.

On January 3, 2011, the Defendants filed Defendants' Motion in Limine. <u>See</u> Doc. 111. The Defendants request that the Court restrict R. Bhandari, opposing counsel, and R. Bhandari's witnesses from introducing, mentioning, or referring to certain matters. The Defendants argue that these matters are not relevant and that, even if they are relevant, the danger of unfair prejudice, confusion, and delay outweighs any probative value.

On January 20, 2011, R. Bhandari filed the Plaintiff's Response in Opposition to Defendants' Motions in Limine [Doc. 111], filed January 3, 2011. <u>See</u> Doc. 127 ("Response"). In his Response, R. Bhandari argues that the items of evidence that the Defendants seek to exclude are relevant to his claims and have probative value far in excess of any harm to the Defendants. Also on January 20, 2011, R. Bhandari filed his Response in Opposition to Defendants' Motions in Limine, in which R. Bhandari addresses the matters relevant to R. Bhandari's counter-defense and asks the Court to deny the Defendants' motions in limine. <u>See</u> Doc. 126 ("Counter-defendant's Response").

## <u>RELEVANT LAW REGARDING RULES OF EVIDENCE</u>

The rules of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and unduly prejudicial evidence. <u>See</u> Fed. R. Evid. 401, 402, and 403. Under the Federal Rules of Evidence, "[e]vidence which is not relevant is not admissible." Fed. R. Evid. 402. "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

## ANALYSIS

The Court will grant some of the Defendants' requests that it exclude evidence and will deny some of the Defendants' requests that it exclude evidence. The Court will thus exclude some, but not all, of the evidence that the Defendants request it exclude at trial.

## I. THE COURT WILL DENY THE DEFENDANTS' REQUEST THAT IT EXCLUDE TESTIMONY REGARDING EMPLOYMENT OR PERSONAL ISSUES INVOLVING JERRY PICKET, THE DEFENDANTS' CHIEF FINANCIAL OFFICER.

The Defendants argue that evidence regarding Picket's employment or personal issues is not relevant to any claims in the case and that, even if the evidence is relevant, the danger of unfair prejudice outweighs its probative value. R. Bhandari argues that the evidence will show that the Defendants waited months before taking any action against Picket and that the Defendants appear to have given Picket every consideration before taking an adverse employment action. R. Bhandari argues that Picket's situation contrasts with the Defendants' quick termination of him with no notice or chance to cure. R. Bhandari argues that the evidence of this disparity is relevant to the issue of punitive damages and that the danger of unfair prejudice outweighs its probative value. At the hearing, R. Bhandari asserted that Claude Camp III, AGH's former CEO, testified that, if an employee had a problem at the hospital, unless the employee did something for which there was no cure, the employee got notice and a right to cure.

The Court will deny the Defendants' request at this time. For the reasons stated on the record at the hearing, if, at trial, Camp testifies that AGH employees got notice and a right to cure unless the employee did something for which there was no cure, the Court will allow the evidence that there were accusations of sexual harassment against Picket, and that the Defendants talked to Picket about the accusations and gave him time to try to fix his problems. If, however, Camp's

testimony relates only to physicians subject to a Physician Agreement, the Court will not allow the evidence to come in, because the evidence will not be relevant, as Picket was not a physician subject to a Physician Agreement; instead, he was a Chief Financial Officer.  The Court will thus deny the Defendants' request at this time without prejudice to the Defendants renewing the request at trial if Camp testifies that AGH's policy of notice and a right to cure is limited to physicians subject to a Physician Agreement.

II.     **THE COURT WILL EXCLUDE EVIDENCE THAT THE DEFENDANTS WERE IN VIOLATION OF OR SUBJECT TO THE STANDARDS OF THE JOINT COMMISSION OF ACCREDITATION OF HEALTHCARE FACILITIES ("JOINT COMMISSION") OR CODE OF ETHICS OF THE AMERICAN MEDICAL ASSOCIATION ("AMA"), BUT WILL NOT EXCLUDE EVIDENCE REGARDING THE INDUSTRY UNDERSTANDING OF THE TERM "DUE PROCESS".**

The Defendants argue that the Court should exclude evidence that the Defendants failed to comply with the Joint Commission's standards or the AMA's code.  The Defendants argue that the Joint Commission is a voluntary organization, and that a hospital such as AGH has to elect to be subject to the Joint Commission's review and standards.  The Defendants assert that AGH has not elected to do so.  The Defendants argue that this evidence is not relevant and that, if it is relevant, the danger of unfair prejudice outweighs any probative value.  R. Bhandari argues that industry understanding is relevant to the jury's interpretation of the ambiguous term "due process."  R. Bhandari argues that the industry understanding is encapsulated in the AMA's code and the Joint Commission's standards.  R. Bhandari further argues that the Defendants have not identified any prejudice.

The Court will grant in part and deny in part the Defendants' request.  For the reasons stated on the record at the hearing, the Court will exclude evidence that is meant to show that the Defendants were in violation of or subject to the AMA's code of the Joint Commission's standards.

-4-

The Court will allow, however, evidence regarding the industry understanding of the term "due process" for the limited purpose of defining the background of due process and what due process means to doctors.  R. Bhandari may introduce the standards and code of ethics as long as he makes clear that he is not stating the Defendants violated them and that he is not stating that they were subject to those standards.  This evidence will not likely prejudice the Defendants, and any prejudicial value does not substantially outweigh the probative value of the evidence.

**III.    THE COURT WILL DENY THE DEFENDANTS' REQUEST THAT IT EXCLUDE EVIDENCE THAT AGH TERMINATED OR LIMITED R. BHANDARI'S PRIVILEGES AT AGH.**

The Defendants argue that the Court should exclude evidence that AGH terminated or limited R. Bhandari's privileges at AGH.  The Defendants argue this evidence is not relevant to the claims in this case, and, to the extent that the evidence is relevant, the danger of unfair prejudice outweighs its probative value.  R. Bhandari argues that there is evidence that his privileges were terminated.  R. Bhandari argues this evidence is relevant, because the "Defendants admit that, if . . . R. Bhandari's privileges were terminated, . . . R. Bhandari would have been entitled to due process." Response at 7.  R. Bhandari argues that, because "he did not receive such process . . . [the] Defendants' failure to give process while terminating privileges will show that Defendants are in breach of their contractual obligations."  Response at 7.  R. Bhandari argues that this evidence is prejudicial only in the sense that all evidence is prejudicial to an opposing party's case.

At the hearing, the Defendants stated that, given the Court's ruling that, as a matter of law, R. Bhandari was terminated and did not resign, see Memorandum Opinion and Order at 36, filed March 17, 2011 (Doc. 152)("Mar. 17, 2011 MOO"), its request that the Court exclude evidence that AGH terminated or limited R. Bhandari's privileges was moot.  The Court will therefore deny the Defendants' request that it exclude this evidence.

**IV.    THE COURT WILL DENY THE DEFENDANTS' REQUESTS THAT IT EXCLUDE EVIDENCE CONCERNING DUE-PROCESS OR PROCEDURAL EMPLOYMENT RIGHTS OR, IN THE ALTERNATIVE, EXCLUDE EVIDENCE CONCERNING ANY DUE-PROCESS OR PROCEDURAL RIGHTS THAT ARE NOT CONTAINED IN A WRITTEN AGH POLICY.**

The Defendants ask the Court to exclude evidence concerning due-process or any procedural employment rights, arguing that the only due-process procedures were set forth in AGH's fair hearing plan and medical staff bylaws, which do not apply in this case. The Defendants argue that R. Bhandari does not have a contractual right to due process and that the evidence is thus not relevant. The Defendants further argue that the danger of unfair prejudice outweighs any probative value. In the alternative, the Defendants ask the Court to exclude evidence of any due-process or procedural rights that are not contained in a written AGH policy, because the evidence is not relevant, and if relevant, the danger of unfair prejudice outweighs the probative value. R. Bhandari argues that this evidence is relevant to the central issues in contention, such as the meaning of the term "due process." He argues that the evidence is not unfairly prejudicial; instead, he argues that this evidence is evidence a jury should be charged with considering as the finder of fact.

At the hearing, the Defendants stated that they believed the Court's Memorandum Opinion and Order, filed March 30, 2011 (Doc. 159)("Mar. 30, 2011 MOO"), which found that the phrase "subject to Hospital's due process procedures" was ambiguous as a matter of law, rendered their request that the Court exclude evidence regarding any due process or procedural employment rights moot. The Court will thus deny the Defendants' request that it exclude evidence regarding any due-process or any procedural employment rights. In its Mar. 30, 2011 MOO, the Court found that it could not determine the meaning of the term "due process" as a matter of law and denied the Defendants' request for summary judgment on that aspect of R. Bhandari's breach-of-contract claim. See Mar. 30, 2011 MOO at 2. For these reasons, and for the reasons stated on the record at the

hearing, the Court will also deny the Defendants' request that it exclude evidence of any due-process or procedural rights that are not contained in a written AGH policy. This evidence will not likely prejudice the Defendants, and because R. Bhandari's case is largely based on whether he was accorded due process, as mentioned in his employment agreement, the danger of unfair prejudice does not substantially outweigh its probative value.

## V.    THE COURT WILL GRANT THE DEFENDANTS' REQUEST THAT IT EXCLUDE EVIDENCE ON PUNITIVE DAMAGES.

The Defendants argue that the Court should exclude evidence on punitive damages, because the evidence is not relevant to any claims in the case. They argue that, even if the evidence is relevant, the danger of unfair prejudice outweighs any probative value. R. Bhandari argues that he is entitled to present evidence support his claims to punitive damages. In the Court's Mar. 30, 2011 MOO, the Court granted summary judgment against R. Bhandari on his request for punitive damages. For this reason, and the reasons stated on the record at the hearing, the Court will grant the Defendants' request that it exclude evidence on punitive damages

## VI.   THE COURT WILL EXCLUDE EVIDENCE REGARDING AGH'S PURPORTED MISTREATMENT TREATMENT OF DR. CHITRA BHANDARI.

The Defendants argue that the Court should exclude evidence regarding AGH's purported mistreatment of C. Bhandari. The Defendants argue this evidence is not relevant and that, if it is relevant, the danger of unfair prejudice outweighs the probative value. R. Bhandari argues that there is evidence that the Defendants brought C. Bhandari into the termination meeting to pressure R. Bhandari to resign and that there is evidence that "joint termination of spouses was part of [the] Defendants' procedure of humiliation rather than proper business practices." Response at 11. R. Bhandari argues the evidence is relevant to show that the Defendants pressured R. Bhandari to resign in bad faith, and in a willful, and wanton breach of contract. R. Bhandari also argues that the

evidence that C. Bhandari did not resign is relevant, because the Defendants required that any resignation by either doctor be tied to the other's resignation, and thus the evidence will show that R. Bhandari did not resign.

In the Court's Mar. 30, 2011 MOO, the Court granted summary judgment against R. Bhandari's intentional-infliction-of-emotional-distress claim and request for punitive damages. In the Court's Mar. 17, 2011 MOO, the Court concluded as a matter of law that R. Bhandari was terminated and did not resign. For these reasons, and the reasons stated on the record at the hearing, the Court will grant the Defendants' request that it exclude evidence regarding AGH's purported mistreatment of C. Bhandari, because the evidence is not relevant. The Court notes, however, that R. Bhandari may call C. Bhandari as a witness to testify about what she saw and hearing in the meeting in which R. Bhandari was terminated.

## VII. THE COURT WILL DENY THE DEFENDANTS' REQUEST THAT IT PRECLUDE R. BHANDARI FROM CALLING WITNESSES OR OFFERING DOCUMENTS INTO EVIDENCE THAT HE DID NOT DISCLOSE IN DISCOVERY.

The Defendants argue that the Court should preclude R. Bhandari and opposing counsel from calling any witness or offering any document into evidence that R. Bhandari did not disclose during discovery in accordance with rule 37(c). R. Bhandari agrees that he is obligated to follow rule 37(c). He argues that the Defendants' motion seeks general relief that the law already provides and that the Court should thus deny the Defendants' request.

At times, the Federal Rules of Civil Procedure are hard to apply, even though they are simply stated. At trial, the Court will presume that it will not allow a party to call witnesses or offer documents that did not get disclosed in discovery, but at times, there are situations which call for an exception to this rule. See Kerns v. Bd. of Cmm'rs of Bernalillo County, No. CIV 07-0771 JB/ACT, 2010 WL 1632732, at *6 (D.N.M. Mar. 31, 2010)(Browning, J.)(stating that rule 37(c)

-8-

provides that if "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." (citing Fed. R. Civ. P. 37(c)(1))). If, at the trial, a party wishes to call a witness or introduce a document that he or it did not disclose in discovery, the Court will listen to the arguments to determine whether there is prejudice and a justifiable reason why the party did not disclose the document or witness. The Court will not, however, at this point, grant the Defendants' broad request. The Court will therefore deny the Defendants' request that it preclude R. Bhandari from calling witnesses or offering documents into evidence that he did not disclose in discovery.

**VIII. THE COURT WILL EXCLUDE EVIDENCE REGARDING THE DEFENDANTS' OVERALL REVENUES, PROFITS, AND WEALTH, AND COMMENTS OR TESTIMONY CONCERNING ANY COMPARISON OF WEALTH BETWEEN R. BHANDARI AND THE DEFENDANTS.**

The Defendants argue that the Court should preclude R. Bhandari, his counsel, and R. Bhandari's witnesses from commenting or soliciting testimony concerning the Defendants' overall revenues, profits, or wealth. The Defendants argue this evidence is irrelevant and that the danger of unfair prejudice outweighs any probative value. The Defendants also argue that the Court should preclude R. Bhandari, his counsel, and R. Bhandari's witnesses from commenting on or soliciting testimony concerning any comparison of wealth between R. Bhandari and the Defendants. They argue that this evidence is not relevant and that the danger of unfair prejudice outweighs any probative value. R. Bhandari argues that the Defendants' requests encapsulate potentially relevant and admissible evidence. He argues that the Court should deny the Defendants' requests to the extent that they seek to exclude relevant evidence.

For the reasons stated on the record at the hearing, the Court will grant the Defendants'

requests that it exclude evidence regarding the Defendants' overall revenues, profits, and wealth, and comments or testimony comparing the Defendants' wealth and R. Bhandari's wealth.  Both parties must be careful, however, that they do not open the door at trial for evidence regarding their wealth.  If one party starts to "poor boy" the other party, the Court will have to even the playing field.  For example, if the Defendants start to present argument or evidence that they are just a poor community hospital, the Court may, upon request, level the playing field by allowing R. Bhandari to present evidence of the Defendants' assets.

## IX.    THE COURT WILL GRANT THE DEFENDANTS' REQUEST THAT IT PRECLUDE R. BHANDARI FROM COMMENTING OR SOLICITING TESTIMONY CONCERNING THE COURT'S STATEMENTS.

The Defendants argue that the Court should preclude R. Bhandari or opposing counsel from commenting on or soliciting testimony concerning the Court's statements in ruling on any matter heard before the trial.  The Defendants argue the evidence is not relevant and that, to the extent it is, the danger of unfair prejudice outweighs its probative value.  The Defendants also argue that the Court should preclude R. Bhandari and his counsel from commenting on or soliciting testimony concerning any of the positions that the Defendants took in pre-trial motions or submissions to the Court, other than in pleadings, in affidavits, and in any Court rulings on these pre-trial motions.  The Defendants argue that this evidence is not relevant, and, to the extent it is, the danger of unfair prejudice outweighs its probative value.  R. Bhandari argues that pretrial rulings and other litigation conduct are generally not an appropriate topic for jury consideration, but that evidence of a party's performance under a contract is relevant "although that evidence might tend to parallel a position taken in litigation."  Counter-defendant's Response at 4 (citing Timberlake Constr. Co. v. U.S. Fidelity & Guar. Co., 71 F.3d 335, 340 (10th Cir. 1995); Roda Drilling Co., No. 07-CV-400-GFK-FHM, 2009 U.S. Dist. LEXIS 55578, at *7 (N.D. Cal. June 29, 2009)).

Generally, the Court does not expect to hear the parties argue or elicit testimony regarding anything that the Court has done in the case at trial before the jury. For this reason, and the reasons stated on the record at the hearing, the Court will grant the Defendants' request. If, at trial, however, it becomes appropriate for one of the Court's opinions or a portion of a transcript of a hearing to be read to the jury, the party wishing to present such evidence must first approach the bench so the Court can hear the parties' arguments regarding whether the Court should allow the evidence into the trial. If R. Bhandari wishes to prepare a stipulation for trial regarding the agreement that the parties reached at one of the discovery hearings concerning peer-reviewed materials, he may send the stipulation to the Defendants and to the Court, along with the highlighted transcript. If the parties reach a stipulation for trial, they will not have to get into any of the Court's rulings on the issue. At the hearing, the parties represented that they did not object to the Court's ruling on this request.

## X.   THE COURT WILL DENY THE DEFENDANTS' REQUEST THAT IT PRECLUDE TESTIMONY CONCERNING THE DEFENDANTS' DECISION NOT TO CALL CERTAIN WITNESSES TO TESTIFY AT TRIAL AND THE PRESENCE/ABSENCE OF CERTAIN WITNESSES AT TRIAL.

The Defendants argue that the Court should preclude R. Bhandari and his counsel from commenting on or soliciting testimony concerning the Defendants' decision not to call certain witnesses to testify at trial, and/or the presence or absence of certain witnesses at trial. The Defendants argue they are not required to call any of the witnesses listed on their trial witness list and that both parties have the right to call any of the listed witnesses via video deposition as none of the witnesses reside within the subpoena power of the Court. The Defendants argue that this evidence is not relevant. They argue that, to the extent the evidence is relevant, the danger of unfair prejudice outweighs its probative value. R. Bhandari asserts that he does not know whom the

Defendants may call and that he will not comment on irrelevant issues.  He argues that in closing arguments, however, he may appropriately comment on the sufficiency and adequacy of the evidence the Defendants present.  R. Bhandari further argues that the Court's jury instructions will likely direct the fact-finders that they cannot draw an inference from the number of witnesses a party calls.

The Court believes that, during closing arguments in civil trials, it is fair game for either side to comment on the fact that a witness was not called.  For this reason, and for the reasons stated on the record at the hearing, the Court will deny the Defendants' request.  The parties can ask the Court to include a jury instruction which instructs the jury that they should not draw any inference from the number of witnesses either party calls.  Either party may also seek an instruction which states that a deposition is like any other evidence in the case.

## XI.    THE COURT WILL EXCLUDE STATEMENTS CONCERNING PERSONAL BELIEFS REGARDING THE JUSTICE OF R. BHANDARI'S CASE AND/OR R. BHANDARI'S RIGHT TO RECOVER DAMAGES IN THIS CASE.

The Defendants argue that the Court should preclude R. Bhandari, his counsel, and R. Bhandari's witnesses from mentioning or stating their personal beliefs concerning the justice of R. Bhandari's case and/or R. Bhandari's right to recover damages in the case.  The Defendants argue that this evidence is not relevant and that, to the extent it is, the danger of unfair prejudice outweighs the probative value.  R. Bhandari argues the Defendants' request is inappropriate because it includes potentially admissible evidence.  At the hearing, the Defendants represented that they were not seeking anything more than to preclude the opposing attorneys from stating their personal beliefs about the case.  For the reasons stated on the record at the hearing, the Court will grant the Defendants' request to the extent the Defendants seek to preclude the attorneys from expressing their personal beliefs about the case.  At the hearing, the parties indicated that they did not object to the

Court's ruling on this request.

### XII.   THE COURT WILL DENY THE DEFENDANTS' REQUEST THAT THE COURT PRECLUDE COMMENTS OR TESTIMONY CONCERNING ANY QUESTION, STATEMENT, OR REFERENCE TO THE EXPERT OPINIONS OF A PERSON <u>NOT PROPERLY IDENTIFIED AS AN EXPERT BY R. BHANDARI.</u>

The Defendants argue that the Court should preclude R. Bhandari, his counsel, and R. Bhandari's witnesses from commenting on or soliciting any testimony regarding any question, statement, or reference to the expert opinions of a person R. Bhandari did not properly identify as an expert pursuant to the Federal Rules of Civil Procedure and the Docket Control Orders of the Court. R. Bhandari argues the Defendants' request is inappropriate because it includes potentially admissible evidence.

The Court takes rule 26 disclosures seriously. As the Court has discussed in prior opinions, if a party does not disclose information required by rule 26, the evidence generally cannot come in at trial. <u>See</u> <u>Negrete v. Maloof Distrib. L.L.C.</u>, No. CIV 06-0338 JB/LFG, 2007 WL 6364904, at *7 (D.N.M. Nov. 14, 2007)(Browning, J.)(discussing rule 37(c)(1) and stating that, "[n]otwithstanding Rule 37(c), the district court may be found to have abused its discretion if the exclusion of testimony results in fundamental unfairness in the trial of the case" (citation omitted)). The Defendants' request is broad, however. It is not limited to a specific context. The Court cannot fairly and appropriately grant the Defendants' broad request without knowledge of the specific contexts in which these situations arose. For these reasons, and the reasons stated on the record at the hearing, the Court will deny the Defendants' request without prejudice to the Defendants' renewing the request at trial. If at trial, a party objects that the opposing party is introducing evidence that he or it did not disclose, the Court will likely sustain the objection.

**XIII.   THE COURT WILL DENY THE DEFENDANTS' REQUEST THAT IT EXCLUDE**
**EVIDENCE REGARDING SETTLEMENT NEGOTIATIONS.**

The Defendants ask the Court to exclude evidence regarding any offer of settlement, compromise, or offer of payment made or not made on behalf of the Defendants.  R. Bhandari argues that rule 408 of the Federal Rules of Civil Procedure does not absolutely preclude the introduction of evidence relating to settlements, and thus the Defendants' request seeks to exclude potentially admissible evidence.

The Defendants' request is broad, and if the Court granted the request it may exclude admissible evidence.  For this reason, and the reasons stated on the record at the hearing, the Court will deny the Defendants' request without prejudice to the Defendants renewing the request at trial.  The parties should, however, approach the bench before getting into settlement or compromise before the jury, and secure a ruling in a concrete context before getting into these subjects in front of the jury.  At the hearing, the parties represented that they did not object to the Court's ruling on this request.

**XIV.   THE COURT WILL EXCLUDE COMMENTS AND TESTIMONY CONCERNING**
**THE GOLDEN RULE OR ITS EQUIVALENT.**

The Defendants ask the Court to preclude R. Bhandari, his counsel, and R. Bhandari's witnesses from commenting on or soliciting any testimony concerning a reference to the "golden rule"[1] or its equivalent.  R. Bhandari argues that evidence of the Defendants' performance under the contract is relevant, and that to the extent that the evidence lends an inference of disparate treatment or disproportionate bargaining power, the jurors may find facts by placing whatever weight they

---

[1] The "golden rule" is a principle that states "you should treat [others] the way you yourself would like to be treated."   Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253, 1263 (9th Cir. 2010)(citing Peterson v. BMI Refractories, 124 F.3d 1386, 1396 (11th Cir. 1997))(other citations omitted).

deem appropriate on testimony.  At the hearing, the parties represented that they did not object to the Court granting the Defendants' request.  For this reason, and the reasons stated on the record at the hearing, the Court will grant the Defendants' request that it exclude comments and testimony concerning the golden rule or its equivalent.

## XV.   THE COURT WILL EXCLUDE EVIDENCE CONCERNING THE COSTS AND EXPENSES R. BHANDARI INCURRED IN BRINGING AND PROSECUTING THIS LAWSUIT.

The Defendants ask the Court to exclude evidence regarding the costs or expenses that R. Bhandari incurred in connection with bringing and prosecuting this case.  The Defendants argue that such evidence is not relevant and that, to the extent it is, the danger of unfair prejudice outweighs its probative value.  R. Bhandari argues that his expenses are relevant to establishing damages under his employment agreement.  He argues that the agreement contains an express clause providing that the prevailing party can recover fees and court costs in a dispute pertaining to the contract.  He argues that he demanded recovery of these expenses in his SAC, and that there is no basis to suggest this evidence is not relevant or is unfairly prejudicial.

Attorneys fees and costs are not an element of any remaining cause of action in this case. Once the trial is over, the prevailing party may seek attorneys' fees and costs pursuant to the contract.  See Guidance Endodontics, LLC v. Dentsply Int'l, Inc., No. CIV 08-1101 JB/RLP, Memorandum Opinion and Order, filed March 31, 2011 (Doc. 631)("Absent statutory authority[, contract,] or rule of court, attorney fees are not recoverable as an item of damages." (citation omitted)).  For these reasons, and the reasons stated on the record at the hearing, the Court will grant the Defendants' request that it exclude evidence concerning the costs and expenses that R. Bhandari incurred in bringing and prosecuting this action.  At the hearing, the parties represented that they did not object to the Court's ruling on this request.

**XVI.   THE COURT WILL DENY THE DEFENDANTS' REQUEST THAT IT EXCLUDE EVIDENCE REGARDING AN INCIDENT IN WHICH JORGE ABALOS, M.D., CHALLENGED ANOTHER AGH STAFF MEMBER TO A FIGHT IN A PARKING LOT.**

The Defendants ask the Court to exclude evidence concerning an alleged incident in which Abalos challenged another AGH staff member to a fight in a parking lot.  The Defendants argue that the only witness who testified about this alleged incident stated it was a rumor and that he was not sure whether Abalos was actually involved in the incident.  The Defendants argue the evidence is hearsay testimony and that, moreover, it is not relevant.  The Defendants further argue that, even if the evidence is relevant, the danger of unfair prejudice outweighs its probative value.

R. Bhandari asserts that Abalos is the employee whom the Defendants put in charge of investigating R. Bhandari's conduct.  R. Bhandari argues that Abalos' conduct in investigating R. Bhandari is essential to the Defendants' defense that they acted in good faith.  R. Bhandari argues that the fact that the Defendants put Abalos in charge of the investigation shows the Defendants' recklessness regarding R. Bhandari's termination.  R. Bhandari also argues that the evidence is not hearsay, because the doctor whom Abalos challenged is available to testify at trial.  R. Bhandari also asserts that the danger of unfair prejudice does not outweigh the probative value.

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Fed. R. Evid. 404(b).  "In other words, one cannot present evidence the relevance of which is based on the forbidden inference: the person did X in the past, therefore he probably has a propensity for doing X, and therefore he probably did X this time, too." Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 705 F. Supp. 2d 1265, at 1268 (D.N.M. 2010).  Evidence of past wrongdoing may be admissible, however, to prove "other purposes, such as proof of motive, opportunity, intent,

preparation, plan, knowledge, identity, or absence of mistake or accident."  Fed. R. Evid. 404(b).

See Huddleston v. United States, 485 U.S. 681, 685 (1988)("Federal Rule of Evidence 404(b) --

which applies in both civil and criminal cases --  generally prohibits the introduction of evidence

of extrinsic acts that might adversely reflect on the actor's character, unless that evidence bears upon

a relevant issue in the case such as motive, opportunity, or knowledge.").  For evidence to be

admissible under rule 404(b), the party offering the evidence must demonstrate four elements:

> (1) the evidence was offered for a proper purpose under Fed.R.Evid. 404(b); (2) the
> evidence was relevant under Fed.R.Evid. 401; (3) the probative value of the evidence
> was not substantially outweighed by its potential for unfair prejudice under
> Fed.R.Evid. 403; and (4) the trial court, upon request, instructed the jury to consider
> the evidence only for the proper purpose for which it was admitted.

United States v. Burse, 150 F. App'x 829, 830-31 (10th Cir. 2005).  When prior bad act evidence

is both relevant and admissible for a proper purpose, "the proponent must clearly articulate how that

evidence fits into a chain of logical inferences, no link of which may be the inference that the

defendant has the propensity to commit the bad act."  United States v. Morley, 199 F.3d 129, 133

(3d Cir.1999) (alterations omitted).  The Tenth Circuit has also stated that district courts must

"identify specifically the permissible purpose for which such evidence is offered and the inferences

to be drawn therefrom." United States v. Youts, 229 F.3d 1312, 1317 (10th Cir. 2000)(citing United

States v. Kendall, 766 F.2d 1426, 1436 (10th Cir. 1985)).  "[A] broad statement merely invoking or

restating Rule 404(b) will not suffice."  United States v. Youts, 229 F.3d at 1317.

In Rocky Mountain Helicopters, Inc. v. Bell Helicopters Textron, a Division of Textron, Inc.,

805 F.2d 907 (10th Cir. 1986), the United States Court of Appeals for the Tenth Circuit held that

the district court did not abuse its discretion in "excluding evidence regarding [Rocky Mountain's

employee's] prior flying record."  805 F.2d at 917.  The lawsuit arose out of a helicopter crash;

Rocky Mountain argued the crash was caused by fatigue failure "of the trunnion,"[2] while Bell argued that the crash was caused by the actions of the pilot, John Ball, "whom they describe[d] as inexperienced and reckless."  805 F.2d at 915.

Bell's second area of appeal concerns several evidentiary rulings made by the district court excluding evidence offered by Bell and, in one instance, admitting evidence offered by Rocky Mountain.  The most compelling issue raised by Bell is its objection to the exclusion of evidence offered to show that Rocky Mountain was negligent in failing to exercise reasonable care for its own property by allowing an untrained and reckless pilot to command the helicopter after receiving notice of such facts.

Bell . . .offered to call Phil Massicotte, a chief pilot, to testify about Ball's flying competence as it existed some period of months before the accident and to testify that he told supervisors at the time that Ball was not ready to fly as "left seat" or command pilot, the position Ball was flying at the time of the accident.  Finally, Bell offered the deposition of a chocker setter, Mark Bartley.  Bartley testified that from a chocker setter's point of view, Ball was "a little bit dangerous" and that he had complained about Ball to his superiors.  After objections by Rocky Mountain, the trial judge excluded all of this evidence, exclusions which Bell claims were prejudicial error.

. . . .

The district court was[, in part] . . . concerned that such evidence was irrelevant, prejudicial or improper character evidence.

. . . .

Much of it is in the nature of character evidence which, in civil cases, is not admissible for the purpose of proving that a person acted in conformity therewith on a particular occasion.  Fed. R. Evid. 404.  This limitation exists because character evidence is generally regarded as being of slight probative value and potentially very prejudicial.  While Bell insisted that it was not offering the evidence of Ball's prior flying performance for the purpose of showing that he acted in conformity therewith, it is clear from the record that the trial court was concerned it would have that effect on the jury.  The court was concerned that if the jurors heard testimony regarding John Ball's past flying conduct, they would be tempted to attribute such conduct to

---

[2] A trunnion is "a part of the helicopter that connect[s] the mast with the rotor blades."  Rocky Mountain Helicopters, Inc. v. Bell Helicopters Textron, a Div. of Textron, Inc., 805 F.2d 910.

Ball, and hence to his employer Bell, at the time of the accident. Several commentators suggest that the danger of jury misuse of the evidence and the prejudicial impressions left in the minds of jurors, even after a proper limiting instruction, usually outweigh any detriment to a party's case caused by exclusion of the negligent entrustment evidence. See, 2 D. Louisell and C. Mueller, Federal Evidence, § 143 at 164 (rev. ed. 1978); Note, "Agency: Negligent Entrustment-May the Defendant Choose the Plaintiff's Theory?" 30 Okla.L.Rev. 181 (1977).

The Notes of the Advisory Committee on Federal Rules of Evidence for Rule 404 indicate that where character evidence is offered for a purpose other than showing actions consistent therewith, there is no "mechanical solution" for admitting or excluding the evidence. According to the Committee, the determination must be made "whether the danger of undue prejudice outweighs the probative value of the evidence," a determination which lies squarely with the discretion of the trial court. United States v. Lowe, 569 F.2d 1113 (10th Cir.), cert. denied, 435 U.S. 932 . . . (1978). Under the circumstances in this case, we hold that the trial court did not abuse its discretion in excluding evidence regarding John Ball's prior flying record.

805 F.2d at 915-18.

The Court finds that this evidence is not offered "for the purpose of proving [that Abalos] act[ed] in conformity therewith on a particular occasion." Fed. R. Evid. 404(a). R. Bhandari argues that he would offer this evidence to show that, although there was an investigation of him, the Defendants chose Abalos to conduct the investigation, who they knew was unreliable and did not act properly when dealing with an adversary, and thus the Defendants did not afford his due process through this investigation. This evidence is character evidence, because it is offered to show Abalos' character -- his willingness to attack his adversaries. Several courts have recognized that when

a person's particular character trait is an operative fact which under the substantive law determines the legal rights and liabilities of the parties, evidence of that trait is not contemplated by the scope of Rule 404 because such evidence is not offered for the purpose of showing that a person acted in conformity with his character.

Weinstein v. Siemens, 2010 WL 5094382, at *2 (E.D. Mich. Nov. 17, 2010)(quoting Reyes v. Mo. Pac. R. Co., 589 F.2d 791, 793 n.4 (5th Cir. 1979)(internal quotation marks omitted); McCormick

on Evidence § 187, at 443 (2d ed. 1972)).  See Am. Airlines, Inc. v. United States, 418 F.2d 180,

197 (5th Cir. 1969)(finding that prior inadequate performance in captain's landing airplane under

adverse conditions admissible to show an employer's negligence in allowing the pilot to land the

aircraft); McCormick on Evidence § 187 (6th ed. 2006)("When character has been put in issue by

the pleadings in [cases in which the plaintiff alleges that an employer was negligent in hiring or

failing to supervise an employee with certain dangerous traits], evidence of character must be

brought forth.").  R. Bhandari's remaining claims are a breach-of-contract claim, an implied-

covenant-of-good-faith-and-fair-dealing claim, and a negligent misrepresentation claim, and the

Defendants' remaining claim is a breach-of-contract claim.  Abalos' character trait is not, however,

an operative fact under which the substantive law determines the parties' rights and liabilities for

the remaining causes of action.  In Rocky Mountain Helicopters, Inc. v. Bell Helicopters Textron,

a Division of Textron, Inc., the Tenth Circuit recognized that evidence of Ball's competence in

flying was offered for a purpose other than showing actions consistent therewith when the evidence

was offered to show "that Rocky Mountain was negligent in failing to exercise reasonable care for

its property by allowing an untrained and reckless pilot to commend the helicopter after receiving

notice of such facts."  805 F.2d at 915.  Similarly, in this case, the evidence that Abalos challenged

another physician to a fistfight is offered for the purpose of showing that the Defendants did not

afford R. Bhandari due process by conducting an investigation into his conduct, because they asked

a person who they were aware acted aggressively when dealing with people with whom he had a

conflict.  As far as the Court is aware, R. Bhandari does not offer this evidence to show that Abalos

acted aggressively in conducting R. Bhandari's investigation.  This evidence is thus offered for an

"other purpose[]," not to "prove the character of the person in order to show action in conformity

therewith."  Fed. R. Evid. 404(b).  The evidence is thus offered for a proper purpose under rule

404(b).

The Court finds that this evidence is relevant.  In his deposition, Abalos testified that he discussed R. Bhandari's refusal to see patients "[s]everal times" with another AGH physician. Deposition of Jorge Abalos, M.D. (taken December 8, 2010), filed January 20, 2011 (Doc. 127-15). R. Bhandari argues that he was entitled to due-process procedures, such as notice and an opportunity to cure, before the Defendants terminated him.  R. Bhandari indicates that the Defendants did not give him notice of any of the issues that they discovered through the investigation, on which they based his termination.  At the hearing, R. Bhandari stated that he believes he can show he was entitled to due process and that he believes the Defendants will argue that they gave him due process when they investigated his conduct.  He argued that he believes this evidence will show that the investigation -- the alleged process they gave him -- was inherently faulty.  The evidence may have the tendency to make R. Bhandari's theory that the process the Defendants allege they gave him -- the investigation -- was faulty, because the Defendants knew that Abalos could act aggressively towards persons, especially those he disliked.  To introduce this evidence at trial, R. Bhandari thus must also introduce some evidence that the Defendants knew that Abalos disliked R. Bhandari. Without evidence that the Defendants' knew that Abalos disliked R. Bhandari, this evidence will not have the tendency to make R. Bhandari's theory more or less likely.  From what the Court can tell, R. Bhandari is intending to set forth two pieces of evidence.  It appears that R. Bhandari intends to call the doctor whom Abalos challenged to a fistfight to testify at trial.[3]  It appears that R. Bhandari also intends to call an AGH board member to testify that the threatened fistfight was

---

[3] At this point, it is unclear whether Abalos made a statement, or asked the other physician a question, or made physical actions challenging the other physician.  When it becomes clear at trial what Abalos said, the Court may, upon objection from the Defendants, consider whether the evidence is hearsay.

widely discussed at the hospital.  This evidence is not hearsay evidence, because it is not offered to prove that Abalos threatened another physician to a fight, but rather to prove that the Defendants had knowledge of this incident when they put Abalos in charge of the investigation.  See Rocky Mountain Helicopters, Inc. v. Bell Helicopters Textron, a Div. of Textron, Inc., 805 F.2d at 916 ("Yet, because the evidence was offered not to prove the truth of the matter asserted but rather to show that Rocky Mountain may have had notice that it had in its employ an untrained and potentially unsafe pilot, the evidence seems to be arguably admissible.").  The Court will give a limiting instruction, if the Defendants desire and request, to tell the jury that they cannot consider the rumor evidence for the truth of the matter rumored.

The Court finds that the unfair prejudice to the Defendants, if any, does not substantially outweigh the probative value of the evidence.  R. Bhandari argues, in his breach-of-contract claim, that he was entitled to due process procedures, such as notice and an opportunity to cure, before he was terminated.  He argues that this evidence may have the tendency to show that the process that the Defendants allege they gave him -- the investigation -- was faulty, because the evidence indicates that the Defendants knew that Abalos acted aggressively towards people with whom he had conflicts. Although this evidence may prejudice the Defendants in some manner, the Court does not believe that it is as prejudicial as the evidence in Rocky Mountain Helicopters, Inc. v. Bell Helicopters Textron, a Division of Textron, Inc. or that it is unfair prejudice.  In Rocky Mountain Helicopters, Inc. v. Bell Helicopters Textron, a Division of Textron, Inc., the Tenth Circuit found that the district court did not abuse its discretion in determining that the danger of unfair prejudice outweighed the evidence's probative value when the court was concerned that, if the jurors heard testimony regarding the pilot's past flying conduct, they would be attempted to attribute such conduct to Ball, and thus to his employer, at the time of the helicopter crash.  Unlike evidence of

a reckless pilot, which the Tenth Circuit recognized might prejudice his employer's case in a lawsuit arising out of a crash, this case is largely a breach-of-contract dispute, and the Court does not believe that, with the proper limiting instructions, the jury will attribute evidence that Abalos challenged another physician to a fight to the Defendants' decision to terminate R. Bhandari.  The Court thus does not believe that the danger of unfair prejudice substantially outweighs the probative value of the evidence.

The Court will instruct the jury, upon request, to consider the evidence only for the proper purpose for which it was admitted.  For example, if requested, the Court may instruct the jury that, during the course of the trial, it told them that it admitted certain evidence for a limited purpose and that they must consider the evidence only for the limited purpose for which it was admitted.  The Court thus finds that the evidence is admissible under rule 404(b), and will not exclude this evidence.  See United States v. Burse, 150 F. App'x at 830-31.  The Court will therefore deny the Defendants' request that it exclude this evidence.

**IT IS ORDERED** that the Defendants' Motions in Limine, filed July 3, 2011 (Doc. 111) is granted in part and denied in part.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Gregory L. Denes
Juno Beach, Florida

-- and --

Michelle L. Gomez
Brownstein Hyatt Farber Schreck, LLP
Denver, Colorado

-23-

-- and --

Eric R. Burris
Adam E. Lyons
Brownstein Hyatt Farber Schreck, P.C.
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Matthew P. Holt
Blaine T. Mynatt
Brad Springer
Holt, Babington & Mynatt
Las Cruces, New Mexico

     *Attorneys for Counter-defendant*

William C. Madison
Madison, Harbour & Mroz, P.A.
Albuquerque, New Mexico

-- and --

Mary Olga-Lovett
Paul J. Brown
Greenberg Traurig, LLP
Houston, Texas

     *Attorneys for the Defendants*